Our next case for argument this morning is United States v. Elmer. Mr. Kamen? Yes, sir. Mr. Kamen? Yes. Yes, Your Honor. Can you hear me all right? Not very well. Is it possible to raise the volume in here? Perhaps you can raise the volume on your end, Mr. Kamen. Yes, I will. Is that better, Your Honor? Marginally. Well, we'll let you know if we're having problems. Fine. Mr. Kamen, you should proceed. Thank you, Your Honor. May it please the Court, Richard Kamen of Kamen and Mowdy for Paul Elmer. And I'd like to focus on the testimony of Michelle Beeland and the argument that part of that testimony, the prosecution improperly was allowed to introduce improper 404B evidence. And the starting point, of course, is the prosecution's claim that Ms. Beeland was not a terribly significant witness. They say they note that she, her testimony was only about 200 out of 1700 pages. But if you'll consider the prosecution's final argument at page 1704 of the transcript, the prosecution argued that the jury could convict Mr. Elmer of conspiracy to obstruct justice based solely on the testimony of Ms. Beeland, that Mr. Elmer instructed her to wear a mask during the early portion of the FDA investigation. And we think that this testimony, when you look at the entire record, is central to where we are today. And her testimony was marred, in our view, by her description of Mr. Elmer's, and I'll use generic terms, unprofessional improper behavior. And he, of course, was her supervisor. She was subordinate to him, and they were both married. Now, the importance of Ms. Beeland's testimony, I think, really is demonstrated by the fact that Mr. Elmer was acquitted by the jury of the substantive count to a substantive obstruction of justice claim. And that testimony hinged entirely on the testimony of Caprice Beerden. Now, Ms. Beerden, of course, brought an awful lot of baggage to the trial with her lies to the FDA and her other lies, including a lie that implicated witness Marcus Fields in illegal conduct, essentially accusing him, along with Mr. Elmer, of illegal conduct. So, if the jury believed Ms. Beerden beyond a reasonable doubt, they almost certainly would have convicted Mr. Elmer of the substantive count too. And I think the acquittal demonstrates that they have serious reservations about her testimony. Now, as I said, Ms. Beerden or Beeland's testimony was buttressed by this description. Admittedly, the court took some efforts to sanitize it of improper and unprofessional conduct. But the prejudice comes from the fact we now know that we unfortunately live in an environment where many, many women have been subjected to sexual harassment and improper behavior in the workplace. So the prejudice is, I think, more significant than might appear at first blush. Mr. Kamin, it's Judge Scudder here. I got a question for you on this. So, let's suppose that the district court didn't take enough care. I appreciate your acknowledging that the district court did sanitize this sum. But let's suppose that we conclude that it was error not to sanitize it altogether. Okay? Isn't it not the case you still face a pretty serious burden of winning reversal on this grounds? Because, you know, don't we have to consider the other evidence against your client in this case? And some of that, on this particular argument, I'll tell you that's what concerns me. There were a lot of employees testify. There were doctors testify from community health. You know, there's a fair bit of evidence. FDA inspectors testified. Yes, sir. Absolutely. But the evidence from all of those really, in large measure, impacted what I'll call the misdemeanor counts, the substantive counts, and not the conspiracy. The conspiracy was central. And that, of course, is the felony. And if, in fact, the jury, having been instructed by the prosecution and the judge that they could find Mr. Elmer guilty of conspiracy, count one, to obstruct justice based solely on Ms. Beeland's testimony about the mask, I think that that demonstrates, I understand your concerns, but I think when we look at the conspiracy count, that count really hinged largely on the testimony of Ms. Beeland and all the other testimonies certainly went to the impropriety and the problems that existed at Pharmacy, but they didn't really go to the conspiracy. Was Ms. Beeland the source of, was she the only source of evidence on the 73 other out-of-specification incidents? I didn't think so. No, no, not Ms. Beeland. Right. So if those 73 out-of-specification incidents were properly admitted at trial, that's very serious proof on the conspiracy front. Well, no, remember, with all respect, Judge Scudder, the conspiracy was to mislead the FDA or to obstruct justice. And if the issue in the misleading of the FDA was whether or not Ms. responsible for these errors and then utilized her position as the director of compliance to mislead the FDA or whether it was a conspiracy between her and Mr. Elmer. And so while we acknowledge the seriousness of the out-of-specification tests, those don't really go to the conspiracy. If Ms. Beerden was lying, because, and that's why I think the government was very precise in telling the jury, look, you can convict Ms. Beerden, Mr. Mr. Elmer of conspiracy to mislead the FDA based upon the testimony of Ms. Beerden. Or you can convict Mr. Elmer of conspiracy to obstruct justice because the indictment was in the sort of either or. You can convict that convinced that you can convict Mr. Elmer of conspiracy to obstruct justice based solely on the testimony of Ms. Beerden. Her description that Mr. Elmer told her to wear a mask. So we think that given that. That's the heart of the conspiracy conviction. And we think that Ms. Beerden's testimony and the problems in her testimony are really significant. Mr. Kamen, if you wish to save any time for rebuttal, now is the time. Yes, I wish to save two minutes. You're now down to one. OK, then I will stand aside. Thank you, Mr. Kamen. Mr. Wright. Mr. Wright. Have we lost Mr. Wright? Mr. Wright, you need to unmute yourself. Mr. Wright. He was there all during Mr. Kamen's argument. Mm hmm. Mm hmm. Mr. Wright, are you back?  OK. Hello. Yes, Your Honor. I apologize for that. I don't. My phone was not on mute. I'm not really sure what happened. Apologies anyway. May it please the court. Brian writes for the United States. I would like to touch on the substance of Ms. Beerden's testimony. But first, I think I want to reset the what the evidence and how it was presented and the actual conviction. So Mr. Elmer cannot splice his convictions and take the facts most unfavorable to the verdicts. So I think it's important to note that the jury we presume the jury takes the facts most favorable to the guilty verdict. So therefore, Ms. Bearden, Ms. Beeland's testimony is taken as true. And I know that Mr. Elmer attempts to use the acquittal on the obstruction of justice count to, I suppose, eliminate Ms. Bearden's testimony. But the obstruction of justice count in the indictment, it's about Marcus Fields and is irrelevant to Ms. Bearden. So I don't think that argument works at all. With that said, I'd like to discuss why Ms. Beeland's testimony was admissible. And I think I would start with a little bit of a dive into the evidence and why without an explanation of why Mr. Elmer had the ability to coerce Ms. Beeland, there would have been an evidentiary gap. So Ms. Beeland in 2014 at the inspection, while she wore a mask, she was otherwise unwilling to lie to the FDA. Mr. Elmer did not trust her and asked her to go home. Something happened in between 2014 and 2016 that made her more willing to lie to the FDA. Mr. Elmer says that the government could introduce evidence of this mentor-mentee relationship, but that existed in 2014 as well. So the only thing that can explain Ms. Beeland's change of heart and willingness to lie to the FDA is the increased intimacy of the Elmer-Beeland relationship. So that was key to explain to the jury why two years later she was willing to lie for Mr. Elmer when she was not before. If that evidence had not been admitted, then Mr. Elmer's prospective attacks on Ms. Beeland, that she was imagining things, that none of this happened, perhaps could have seemed more likely to the jury because there would have been an evidentiary gap to explain her conduct in 2016. So we think for that reason, the evidence is highly probative, whether the court wants to view it as direct evidence or under Rule 404B. Irrespective of that, I think what Judge Scudder pointed out is that whether you view it as prejudice or a harmless error argument, considering the otherwise overwhelming evidence, the few lines of Ms. Beeland's testimony doesn't require a reversal here. We have testimony from even beyond Beeland. We have testimony from a cooperator, Bearden. We have testimony from other employees at Pharmacon, including Marcus Fields. We have the FDA inspectors. We have Mr. Elmer's business partners. Then we have documentation showing the test failures. We have emails from Feng Wang and others explaining to Mr. Elmer, showing that he had the knowledge of the test failures and took steps to cover them up. Mr. Reitz, can you clarify one aspect of some confusion that popped up, I think, in the first colloquy with your adversary? And that is, for what purpose did the government introduce these other out-of-specification incidents, these 70 or 73? My impression from the papers was that those were introduced as affirmative evidence of the conspiracy charged in the indictment. Am I mistaken? No, that is 100 percent correct, Your Honor. As the indictment shows and as how the trial proceeded, those out-of-the-third-party tests were part of the conspiracy. They were part of what Mr. Elmer covered up. Mr. Elmer has argued that for some reason the internal and external tests are severable, but that just does not comport with the charges in the indictment or how the evidence proceeded. To further his conspiracy, Mr. Elmer had to cover up all test failures because if the test failures from third party were known to the FDA, then the investigation would have gone completely differently. Eventually his business went out of business for that reason. So all the test failures are relevant to the conspiracy as charged in the indictment. Was that evidence introduced as a substantive matter on any other count? Does it go to any other count? No, I don't believe so. It was all about the conspiracy. But again, that was as charged in the indictment. Mr. Elmer's conspiracy was in a nutshell covering up the test failures, knowing about the potency test failures, and then lying to the FDA. And there's no way to separate the internal and external test failures from that charge conspiracy. If there are no further questions on those points, I do want to make a few points of clarification about the record on the plea negotiations. While I don't think these are dispositive to Mr. Elmer's acceptance of responsibility claim, I think they're important and that the court should not have a mistaken impression. Everything I'm going to cite here is found at District Court Docket Number 254. We moved to supplement the record with emails between the parties. That was granted I think only last week, so the court may be unaware of that, but these emails can be found at Docket 254. So three points I would like to make, hopefully quick. First, Mr. Elmer says the government rejected any C plea. There are multiple emails that are now on the record showing that the government was willing to enter a C plea, just not on the terms that Mr. Elmer wanted, that being a split sentence or home detention. The government was willing to offer a C plea just to a term of imprisonment. Two, Mr. Elmer claims the government offered nothing in return, but as an email dated 8-22-17 shows, we offered three levels off for acceptance of responsibility, up to four levels off for cooperation, which would have significantly reduced his guideline term and placed him in Zone C, making him eligible for home detention. Third, Mr. Elmer says there is no cooperation offer, but that same email dated August 22, 2017 offered a four-level reduction if, quote, if Mr. Elmer cooperated with him the next month. That postdated the attorney proffer Mr. Elmer references as having been satisfactory in the unrelated ASC case, but that proffer was never deemed acceptable. The attorneys on this case and the ASC were, excuse me, the attorney on this case was co-lead counsel in the ASC case, and that offer would not have been made, the cooperation offer would not have been made if it was deemed acceptable. I hope those points clarify a few things that were maybe lacking in the record from the briefing, and with that, if there are no further questions, the government would ask the court to affirm in all respects. Thank you, Mr. Wright. And I apologize again for the technological difficulties. You're welcome, Your Honor. Thank you. Mr. Kamen, anything further? Yes, very briefly. I hope it's clear that in the plea discussions, there was a prior case involving unrelated, involving an investigation into male consent. That's where the government said if Mr. Elmer cooperates, but essentially what they wanted him to do was to plead guilty to something he didn't do. So that was completely unrelated to this case. And our argument regarding acceptance of responsibility involved this case, not the ASC. And again, I come back to a transcript 1704 and 1705, where the prosecutor says you could look at this one of many ways. You could look at the fact that Mr. Elmer conspired with Michelle Beeland to obstruct investigations by getting her to put on a mask, getting her to take down signs for her FDA facility, or you could look at it another way. Thank you, Mr. Kamen. Fine, Your Honor.